IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JERRY E. PANNACHIA, III, | ) |
| Plaintiff, | ) |
| v. | ) 1:20CV418 |
| CITY OF DURHAM, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff alleges that Defendant terminated his employment in retaliation after Plaintiff reported and objected to a coworker's racially discriminatory comments, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* (ECF No. 1 ¶ 1.) Before the Court is a Motion for Summary Judgment filed by Defendant. (ECF No. 23.) For the reasons stated herein, Defendant's motion will be granted.

**I.   BACKGROUND**

Plaintiff was employed as a Senior Laborer in Defendant's Landscaping Division from March 5, 2018, until he was terminated on June 18, 2018. (ECF No. 27 ¶¶ 2, 10.)

In late March 2018 and again on April 30, 2018, a co-worker named Diu Rahlan made a number of racist remarks in the presence of Plaintiff and another coworker, Anthony Williams. (*Id.* ¶ 3; *see* ECF No. 26-2 at 60:11–19, 61:8–25.) Mr. Rahlan is Hmong, Plaintiff is white, and Williams is African American. (ECF Nos. 1 ¶ 11; 8 ¶ 11; 24-2 ¶¶ 8, 12.) Plaintiff avers that Rahlan told Plaintiff and Williams that he "hated black guys," "did not want to work

1

with black guys," and hoped Defendant would not hire more black employees because "they are lazy." (ECF No. 27 ¶ 3; *see* ECF No. 26-2 at 60:13-19, 61:17-25.) Williams was deeply offended and nearly physically fought with Rahlan. (ECF Nos. 24-2 ¶ 9; 27 ¶ 3.) Instead, Williams and Plaintiff reported Rahlan's remarks to their supervisor. (ECF Nos. 24-2 ¶ 10; 27 ¶ 4.)

Plaintiff, Williams, and Rahlan were called to a meeting on May 2, 2018, to discuss the complaint. (ECF No. 27 ¶ 5.) The three men were joined by their supervisor, a human resources representative named Cheryl Warren, and Kevin Lilley, the Assistant Director for Operations in Defendant's General Services Department. (*Id.*; ECF Nos. 24-2 ¶ 11; 24-4 ¶ 4.d.i.) Warren led the meeting and facilitated a conversation between the employees. (ECF Nos. 24-2 ¶ 12; 24-5 ¶ 15; *id.* at 13–15.) After some discussion, Warren and Lilley expressed their belief that Rahlan's comments were made because of "cultural differences" and because English is Rahlan's second language. (ECF No. 27 ¶ 5; *see* ECF No. 24-5 ¶ 16; *id.* at 15.) Williams avers that he agreed with Warren and that he and Rahlan shook hands, apologized to each other, and "settled [their] differences" at the meeting. (ECF No. 24-2 ¶¶ 15, 17.) Plaintiff, however, disagreed with Warren and Lilley. (ECF No. 27 ¶ 5.) He believed that they were minimizing what he considered "blatantly racist comments," became upset, and expressed his belief that they were "not taking [his] report of racist statements seriously." (*Id.*)

Conflicting evidence paints opposing pictures of Plaintiff's behavior during the meeting. Plaintiff avers that he was upset during the meeting but was not aggressive, abusive, or threatening. (ECF No. 27 ¶¶ 5–6.) A memo drafted by Warren immediately following the meeting describes Plaintiff as "angry" and states that he "demanded" Rahlan apologize, called

him "a disgrace to the city and the uniform he wears," insisted that Rahlan be fired or moved to a different crew, and "objected" to the meeting's resolution by saying that Rahlan was "getting off [too] easy." (ECF No. 24-5 at 14–15.) After Plaintiff was terminated, however, Warren sent an email describing him as volatile, hostile, highly confrontational, extremely aggressive, bullying, and threatening. (ECF No. 24-8 at 1.) Lilley avers that Plaintiff was aggressive, abusive, verbally confrontational, and threatening. (ECF No. 24-4 ¶ 4.d.vii–ix.) Williams avers that Plaintiff was disruptive, irate, aggressive, and inappropriate. (ECF No. 24-2 ¶¶ 13–14.)

After the meeting, another supervisor told Plaintiff to apologize to Lilley. (ECF No. 27 ¶ 7.) Plaintiff stated he "didn't think [he] did anything wrong during the meeting." (*Id.*) His supervisor said Lilley "was upset with [Plaintiff] for disagreeing with him during the meeting" and that "it would be best for [his] job to apologize." (*Id.*) Plaintiff did apologize to Lilley, and Lilley accepted his apology. (*Id.*)

Plaintiff was then transferred to the cemeteries unit within the Landscaping Division. (*Id.* ¶ 8.) Lilley states in his affidavit that Plaintiff was transferred because he "struggled with working as a team member" and landscaping cemeteries required minimal interaction with other crew members. (ECF No. 24-4 ¶ 6.d.)

On June 15, 2018, Plaintiff prepared to tow a trailer with landscaping equipment from Defendant's General Services Department building to his worksite. (ECF No. 27 ¶ 9.) Plaintiff's former supervisor instructed him to secure the trailer to his truck using a "hitch pin." (*Id.*) Plaintiff avers that as he looked for a hitch pin, his new supervisor in the cemeteries unit intervened and attached the trailer to Plaintiff's vehicle with a simple piece of metal. (*Id.*)

3

Defendant's witnesses dispute this testimony. (*See, e.g.*, ECF No. 24-4 ¶ 9.) Plaintiff then hit a bump on the way to his worksite, which dislodged the piece of metal holding the trailer to the truck. (ECF No. 27 ¶ 9.) This incident did not cause any injury or property damage, (*id.*), though Defendant's witnesses aver that the loose trailer could have caused injury to Plaintiff, other employees, or other drivers, (ECF No. 24-4 ¶ 9).

Plaintiff was terminated on the next business day by letter on June 18, 2018. (ECF No. 27 ¶ 10.) According to the letter, Plaintiff was terminated for "[n]ot meeting performance standards." (ECF No. 27-2.) Lilley avers that Plaintiff's termination "was not based on a single incident in isolation" but was "instead based on the Performance Issues and the Safety Incident." (ECF No. 24-4 ¶ 10.) He says Plaintiff's performance issues included (1) refusal to take direction from supervisors, (2) aggressive behavior toward coworkers and the public, (3) inability to competently use work equipment, and (4) issues with teamwork. (*Id.* ¶ 6.) Defendant's other witnesses substantiate Lilley's account. Williams, for example, avers that Plaintiff "does not know how to use a weed whacker," would make loud, angry phone calls during work, and once "verbally berated" a Domino's Pizza employee while ordering pizza at work. (ECF No. 24-2 ¶¶ 5–6, 22.) Plaintiff's supervisor avers that "Plaintiff exhibited aggressive and confrontational behavior" on "numerous occasions" and "had a hard time following my instructions." (ECF No. 24-1 ¶¶ 5–7, 9.) Finally, Defendant's Deputy City Manager avers that, while he did not know all of Plaintiff's performance issues prior to his termination, the hitch pin incident was of "serious concern" because it "had the potential to cause serious injury to people, as well as, to property." (ECF No. 24-3 ¶ 6.)

Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") on July 25, 2018, alleging retaliation in violation of Title VII, (ECF No. 27-1), and on May 14, 2019, the EEOC determined that the evidence established that Defendant did terminate Plaintiff in retaliation to his protected activity,[1] (ECF No. 27-3).

Plaintiff subsequently filed this action on May 11, 2020, alleging maintenance of a hostile work environment and retaliation in violation of Title VII. (ECF No. 1.) Defendant moved to dismiss the suit, (ECF No. 6), which motion this Court denied on March 3, 2021, after finding that "the sole claim upon which Plaintiff seeks relief in his Complaint is one of retaliation" and that he alleged sufficient facts to establish a plausible claim for relief on this claim, (ECF No. 12 at 4, 7). Defendant then filed the present motion on September 9, 2021. (ECF No. 23.)

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotations omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant . . . and to draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility

---

[1] The EEOC's determination is not binding on this Court. "[W]hen the EEOC finds reasonable cause of discrimination, either side can litigate the claim de novo in district court." *Nealon v. Stone*, 958 F.2d 584, 588 (4th Cir. 1992) (citing 42 U.S.C. § 2000e–5; 29 C.F.R. § 1601)).

determinations," *Jacobs*, 780 F.3d at 569, and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the moving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324.

## III. DISCUSSION

Defendant argues that it is entitled to judgment as a matter of law because (1) Plaintiff "lost the protection of Title VII" by opposing discriminatory conduct in an unreasonable way,

and (2) Plaintiff cannot establish that Defendant's legitimate, non-retaliatory reason for termination was pretextual.[2] (ECF No. 24 at 11–22.)

## A.    Plaintiff did not "lose" the protection of Title VII

Title VII prohibits employers from discriminating against any employee "because he has opposed any practice" made unlawful by the act "or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of Title VII retaliation, a plaintiff must show "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 132 (2012).

To constitute protected activity, "opposition" to unlawful discrimination "need not rise to the level of formal charges of discrimination." *Armstrong v. Index J. Co.*, 647 F.2d 441, 448 (4th Cir. 1981). Opposition "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999) ("[A]s long as an employee complains . . . in an orderly and nondisruptive manner, the employee's activities are entitled to protection."). However, behavior that is

---

[2] In its reply, Defendant additionally argues that "Plaintiff has not demonstrated a causal link between his purported protected activity and his termination" necessary to establish a prima facie claim. (ECF No. 29 at 1.) New arguments raised in a reply, however, are not properly before the Court. LR 56.1(e) (requiring a defendant movant on summary judgment to "set out the elements that the claimant must prove . . . and explain why the evidence is insufficient to support a jury verdict on an element or elements" in an initial memorandum and limit its reply brief to "matters newly raised in the response").

7

"insubordinate, disruptive, or nonproductive" is not protected activity under Title VII. *Armstrong*, 647 F.2d at 448. In each case, to "'determine whether an employee has engaged in legitimate opposition activity we employ a balancing test' weighing 'the purpose of the Act to protect persons engaging reasonably in activities opposing discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.'" *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 902 (4th Cir. 2017) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)).

Here, Plaintiff argues that he "engaged in two separate and discrete activities protected by Title VII. First, . . . he reported workplace racism on April 30, 2018. . . . Second, . . . he opposed racist workplace comments" during the meeting on May 2, 2018. (ECF No. 26 at 8–9.) There is no dispute that the first of these—reporting Rahlan's comments to Plaintiff's supervisor—constituted protected activity.

Instead, Defendant argues that Plaintiff was "stripped" of this Title VII protection by his behavior during the meeting on May 2, 2018. (ECF No. 24 at 17.) There are two flaws in this argument. First, there is a genuine issue of material fact as to whether Plaintiff's behavior was insubordinate, disruptive, or nonproductive so as to fall outside the protection of Title VII. Plaintiff avers that his criticism of Lilley and Rahlan was not aggressive, abusive, or threatening. Warren's May 2, 2018, memo—when read in the light most favorable to Plaintiff—similarly describes opposition to workplace discrimination that was emotional and heated but not unprotected. Warren's later correspondence and Defendant's witnesses dispute this account, creating a genuine issue as to whether Plaintiff's conduct was protected activity that cannot be resolved on summary judgment.

8

Second, the Court finds no support for Defendant's novel argument that an employee's protected activity can become unprotected due to subsequent unreasonable conduct. Defendant cites two cases from outside the Fourth Circuit for this proposition, neither of which support its position. In *Miller v. American Family Mutual Insurance Co.*, 203 F.3d 997 (7th Cir. 2000), plaintiff called her supervisors incompetent and threatened to quit if she was not given a raise after previously complaining of sex discrimination. *Id.* at 1009. Rather than hold that plaintiff was "stripped" of her Title VII protection, the Seventh Circuit addressed her "inappropriate ultimatum" at the burden shifting phase and found it to be a legitimate, non-discriminatory justification for her termination that was not pretextual. *Id.* Similarly in *Whatley v. Metropolitan Atlanta Rapid Transit Authority*, 632 F.2d 1325 (5th Cir. 1980), the Fifth Circuit held that defendant terminated plaintiff not because he administered an employee's complaint—protected activity—but because he failed to follow requisite administrative procedures in doing so. *Id.* at 1328–29. Again, the court did not "strip" plaintiff of his Title VII protection but instead held at the burden-shifting stage that defendant "was able to articulate valid business reasons for the dismissal that were not pretextual." *Id.* at 1328.

Thus, Defendant's argument that Plaintiff "lost" his Title VII protection is unpersuasive. Plaintiff has established a prima facie claim of retaliation.

### B. Plaintiff cannot establish that Defendant's legitimate, non-retaliatory reasons are pretextual

Once a plaintiff has established a prima facie claim of retaliation, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). This is "a burden

9

of production, not persuasion," *id.*, and "can involve no credibility assessment," *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000).

Here, Defendant has produced substantial evidence that its decision to terminate Plaintiff was based on a combination of various performance issues. Lilley avers that Plaintiff's supervisors complained that he did not take direction, was often aggressive with staff and the public, could not competently use all necessary equipment, and disrupted work crews. Finally, Lilley states that Plaintiff's failure to use a hitch pin on June 15, 2018, could have caused a serious safety incident, and that this incident contributed to the decision to terminate his employment. As mentioned, Defendant's other witnesses corroborate Lilley's account. Thus, Defendant has met its burden of production.

Since Defendant met its burden, "the burden shifts back to [Plaintiff] to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons but were a pretext" for retaliation. *Holland*, 487 F.3d at 214 (internal quotations omitted). The pretext stage requires plaintiff to "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) ("[T]he [burden shifting] framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action."). To survive a motion for summary judgment, a plaintiff must submit sufficient evidence to "permit the trier of fact to infer the ultimate fact of intentional" retaliation. *Dugan v. Albemarle Cty. Sch. Bd.*, 293 F.3d 716, 723 (4th Cir. 2002). One method of proving but-for causation is to show the employer's proffered legitimate, non-retaliatory explanations are "unworthy of credence." *Tex. Dept. of*

10

*Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981). "[W]hen all legitimate reasons . . . have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978); *Reeves*, 530 U.S. at 148 ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [retaliated]."). Ultimately, the plaintiff bears the burden to show "both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct." *Foster*, 787 F.3d at 252 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Here, there is some evidence that Plaintiff's purportedly protected activity was a factor in his termination. According to Plaintiff, he was required to apologize for his opposition to Lilley's handling of Rahlan's racist remarks. He was thereafter transferred to the cemeteries unit because, according to Lilley, he struggled with teamwork. Later, Lilley again referred to Plaintiff's struggle with teamwork as one of several reasons for Plaintiff's termination. A reasonable jury could therefore find that Plaintiff's protected opposition to Lilley was construed as bad teamwork and insubordination that ultimately factored into his termination.

However, even taking the evidence in the light most favorable to Plaintiff, the evidence cannot support a reasonable inference that Defendant's other, non-retaliatory reasons were pretextual or that his protected activity was a but-for cause of his termination. Plaintiff has not submitted any evidence to contradict testimony that he was aggressive toward the public while on duty, made disruptive phone calls, was regularly angry and hostile while at work,

11

commonly ignored instructions, and could not competently use all equipment. The uncontroverted evidence establishes that each of these legitimate, non-retaliatory factors contributed to Plaintiff's termination.

Plaintiff argues that he has created a genuine issue of material fact as to whether the hitch pin incident is being used as a pretext. Defendant's evidence shows that Plaintiff was fired one business day after the incident, Lilley refers to the incident as a reason for his termination, and Defendant's Deputy City Manager avers that this incident was the only performance failure of which he was aware. Plaintiff, on the other hand, testifies that he was not insubordinate and that his supervisor told him to use a piece of metal rather than a hitch pin to attach the trailer to the truck. While this evidence does create a genuine dispute over whether Plaintiff was at fault for the hitch pin incident, it is not clear to the Court that Plaintiff's evidence supports the additional inference that the hitch pin incident is a false reason for his termination. It appears uncontroverted that the reports of the incident reviewed by those who ultimately terminated Plaintiff uniformly assigned the blame to him, and it is not clear that Plaintiff's evidence would allow a jury to find otherwise. (*See* ECF Nos. 24-1 ¶ 18; 26-6; *see also* ECF Nos. 24-3 ¶ 6; 24-4 ¶ 9.) Plaintiff's burden is not to show that Defendant's reason for terminating him was in error, but that the proffered reasons were not the true reason at all. *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 383 (4th Cir. 1995) ("The crucial issue in a Title VII action is an unlawfully [retaliatory] motive for a defendant's conduct, not the wisdom or folly of its business judgment.").

Regardless, even if Plaintiff has established a genuine issue of fact as to whether the hitch pin incident was a real reason for his termination, he has failed to submit sufficient

12

Case 1:20-cv-00418-LCB-LPA   Document 45   Filed 03/17/22   Page 12 of 15

evidence to allow a reasonable jury to infer that, but for his protected activity, he would not have been fired. As discussed, the uncontroverted evidence shows that a litany of other performance issues led to Plaintiff's termination. Elimination of just one of these legitimate, non-retaliatory reasons is insufficient to support the reasonable inference that retaliation, rather than these other reasons, was Defendant's true motive.

Finally, Plaintiff argues that Defendant "treated a similarly situated coworker more favorably than it treated" Plaintiff. (ECF No. 26 at 14–17.) According to Plaintiff's evidence, Defendant planned to terminate a second employee alongside Plaintiff. (*See* ECF No. 26-5.) Lilley wrote in an email to the Director of the General Services Department that both employees "have continually been at odds with both front-line staff and their immediate supervisors." (*Id.*) Ultimately, however, Lilley decided not to terminate the second employee. (ECF Nos. 26-3 at 98:19-25; 26-8 at 1.) Plaintiff argues that Lilley's decision to spare one employee, but fire Plaintiff indicates that Plaintiff's protected activity was the real cause of his termination. (ECF No. 26 at 14–17.)

The evidence does not show, however, that the two employees were similarly situated. While Lilley's email does state that both employees struggled with following instructions, it describes these struggles very differently. (ECF No. 26-5.) Lilley states that Plaintiff "has on several occasions openly questioned assignments and has refused to work with individuals," and then describes the hitch pin incident. (*Id.*) Contrast this description with Lilley's description of the second employee, who he writes "has developed a habit of feigning illness whenever the assignment becomes a more physical endeavor, most recently leaving work claiming illness when assigned the string trimming duty at Maplewood Cemetery." (*Id.*) The

13

employees were therefore not similarly situated: one was avoiding physical work while the other, Plaintiff, was allegedly openly insubordinate and, in Lilley's view, caused a safety incident. Further, while the letter does state that "both individuals [were moved] to different crews" and "[n]either have been successful in any of the settings we have tried," (*id.*), Lilley later testified that "I had several people come to me and tell me that dismissing [the second employee] was a mistake" because "he had not been properly trained or coached by his supervisors," (ECF No. 26-3 at 98:21-25).

Plaintiff has presented no evidence to contradict this testimony or show that Plaintiff received similar support from his supervisors. Thus, even taking the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude that Lilley's decision to terminate Plaintiff, but not the second employee, resulted from Plaintiff's protected activity. Instead, the uncontroverted evidence establishes that the two employees had very different performance issues and Lilley was encouraged to give one a second chance but not the other.

In summation, no reasonable jury could find based on the preponderance of the evidence that Plaintiff was terminated because of his purportedly protected activity. Instead, uncontested evidence establishes that Defendant had numerous legitimate, non-discriminatory reasons to terminate Plaintiff. While Plaintiff has created genuine issues of fact as to whether his purportedly protected activity was considered against him in his termination and whether one of Defendant's legitimate, non-retaliatory reasons was pretextual, Plaintiff has failed to contradict evidence that he was otherwise ill behaved, insubordinate, and not competent to complete all assigned tasks at work.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 23), is GRANTED and the Clerk's office shall terminate this case.

This, the 17th day of March 2022.

/s/ Loretta C. Biggs
United States District Judge